**Sebastian Infanzón MITCHELL, Trustee for Southern Auto Sales Corp., Plaintiff-Appellee,**

**v.**

**WESTERN DATA PROCESSING SERVICES, CORP., Defendant-Appellant.**

Civ. No. 84–2413 (RLA).
Bankruptcy No. 82–398(A).
Adv. No. 83–126.

United States District Court,
D. Puerto Rico.

June 24, 1987.

Sergio Ramírez de Arellano, Hato Rey, Puerto Rico, for plaintiff-appellee.

José Raúl Cancio Bigas, Hato Rey, Puerto Rico, for defendant-appellant.

## OPINION AND ORDER

ACOSTA, District Judge.

This is an appeal from a judgment issued by the Bankruptcy Court in favor of plaintiff in the amount of $50,000.00. In so doing, the Court avoided a transfer of those funds to the defendant.

## BACKGROUND

On May 7, 1982 Southern Auto Sales Corp. (SAS) filed a petition under Chapter 7 of the Bankruptcy Code whereupon Sebastian Infanzón Mitchell was appointed trustee for the liquidation of the estate.

This action was originally filed by the trustee to avoid a certain transfer of prop-

erty of the estate to defendant, Western Data (Western), consisting of $50,000.00. The transfer was accomplished through the endorsement to Western of a check paid by Subaru America, Inc. to SAS.

By way of an amended complaint, the trustee challenged the transfer by pleading alternative causes of action pursuant to 11 U.S.C. §§ 544(b), 547(b), 548, 550 and the Uniform Fraudulent Conveyance Act.

The case was tried by the Bankruptcy Court on September 12, 1983. During trial, and in his post-trial brief, the trustee limited his claims against defendant to liability under Section 548 (fraudulent transfers) and 550 (liability of transferee of avoided transfer).

In an Order issued on April 27, 1984 the Bankruptcy Court found defendant liable under 11 U.S.C. §§ 548(a), 548(a)(2)(A)–(B)(ii) and 550.

## UNCONTESTED FACTS [1]

1. On May 7, 1982, a petition for relief under the provisions of Chapter 7 of Title 11, United States Code, was filed in the Bankruptcy Court by debtor SAS. The petition was granted and an order for relief was entered.

2. Plaintiff is the duly appointed, qualified and acting trustee of debtor.

3. Prior to the order for relief, the debtor was engaged in the business of selling automobiles in the City of Ponce, Puerto Rico.

4. On or about March 5, 1982, debtor endorsed to defendant check number P13676, dated February 10, 1982, originally issued by Subaru of America, Inc. to the order of Southern Auto Sales Corp., in the amount of $50,000.00, which was deposited in Western's account number 051–019545 at Banco Santander Puerto Rico, Ponce Branch.

5. Thereafter, on March 11, 1982 defendant issued check number 03–858 in the amount of $5,000.00 to Agustin Diaz, Esq. (identified as professional services to Southern Auto Sales Corp.).

6. On March 11, 1982 defendant also issued check number 03–0859 in the amount of $5,000.00 to Agustin Diaz, Esq. (identified as professional services to Auto Credit Corp.).

7. On March 22, 1982 defendant issued check number 03–0890 in the amount of $5,000.00 to Enrique Amy, Jr. (identified as installment number 18 for retirement and vacation pay).

8. On March 22, 1982 defendant also issued check number 03–891 in the amount of $1,176.30 to GEMASCO (identified as reimbursement of accumulated vacation pay of Mr. Nelson Marin Soto).

9. On March 30, 1982 defendant issued check number 03–939 in the amount of $17,725.10 to Municipio de Ponce (identified as municipal patent taxes owed by Southern Auto Sales for fiscal year 1979–1980).

10. On March 27, 1982 defendant issued check number 04–957 in the amount of $6,000.00 to GEMASCO (identified as estimated service charges for warehousing, offices, telephone and payroll for the months of March and April, 1982).

11. On April 5, 1982 defendant issued check number 04–958 in the amount of $10,000.00 to Citibank, N.A. (identified as payment plan dated April 5, 1982 between Citibank, N.A. and Southern Auto Sales Corp.).

## ISSUES

Defendant has sought review from the Bankruptcy Court's Order alleging that:

(1) The findings of fact are not supported by the evidence;

(2) the facts do not support the conclusions of law;

(3) the Court erred in finding there had been a preferential transfer or fraudulent conveyance of property of the estate under Sections 547 and 548; and

(4) the Court erred in the application of Section 550.

---

**1.** According to the pretrial order filed by the parties on July 6, 1983.

## STANDARD OF REVIEW

In accordance with Rule 16 of the First Circuit Rules Governing Appeals from Bankruptcy Judges to District Courts, Appellate Panels and Courts of Appeals, effective March 1, 1980, we are bound to "accept the bankruptcy judges findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the bankruptcy judge to judge the credibility of the witnesses." *See also In re: John E. Tully,* 818 F.2d 106 (1st Cir.1987); Bankruptcy Rule 8013.

## ARGUMENTS

## THE FACTS

We shall begin by addressing the particular facts defendant contends are not supported by the evidence.

### Findings 15 and 16

The Bankruptcy Court made reference to Agustin Diaz, Esq. as an "unsecured creditor" for professional services in connection with the bankruptcy of SAS.

Defendant challenges this finding alleging that even though Mr. Diaz may be "technically" an unsecured creditor of the estate, since the payment was a retainer for future work, the only procedure available for returning the excess of his fees to the estate is through 11 U.S.C. § 329(b) and Bankruptcy Rule 2017 and not through the avoidance mechanism.

We dismiss defendant's argument on the grounds that defendant itself acknowledges Mr. Diaz was an "unsecured creditor" and the qualifier of "technically" has no import.

### Finding 17

The Bankruptcy Court concluded that the payment to Enrique Amy, Jr. was an installment for his retirement and vacation pay.

Defendant argues that, even though the payment stub stated what the Court concluded, the Court was nonetheless bound by testimony presented at trial to find that the payment was Mr. Amy's commission for services rendered.

The Bankruptcy Court was not bound by the testimony presented by the parties even if the same contradicts the reasons given in the payment stub for the monies disbursed to Mr. Amy. It had the discretion of not giving weight to the testimonial evidence where the written evidence amply supported its finding.

### Finding 24

Defendant challenges the Bankruptcy Court's finding that Citibank, N.A. was an unsecured creditor claiming that Citibank, N.A. was instead a secured creditor with guarantees on a car inventory and a second mortgage on property of SAS.

However, the evidence in the record supports a finding that at the time of the transfer, in 1982, the securities were worthless in that the sale of cars had been discontinued since 1981 and the trustee had abandoned the property to the FDIC rendering the second mortgage valueless.

### Finding 28

The Bankruptcy Court held that on March 5, 1982, when the transfer was made, SAS was insolvent and Armando Wirshing, Jr.[2] knew the extent of its insolvency and the improbability of future revenues.

Defendant alleges that this finding could only be based on the schedules and statements of affairs filed by the debtor in the bankruptcy proceedings and by the trustee's interim reports which were not introduced as evidence at trial.

The Bankruptcy Court's finding, however, was supported by the testimony of Wirshing who admitted that the $50,000.00 at issue were precisely the last monies available to the debtor a fact that prompted them to decide to close the business.

This was confirmed by the subsequent reports prepared by the trustee.

### Finding 33

The Bankruptcy Court found that the trustee concluded in his periodic interim

---

**2.** President of SAS, Western, Auto Credit as well as president and director of Auto Credit Corp. and president, director and shareholder of GEMASCO.

reports filed with the Bankruptcy Court that no distribution to unsecured creditors had been made nor was any foreseen except for whatever funds could be recovered from the $50,000.00 transfer. Also, that only priority creditors had an opportunity to receive a small dividend of their claims.

Again defendant challenges the Court's consideration of this evidence insofar as it was not made part of the trial record. Defendant further contends the trustee's interim reports are not amenable to judicial notice.

■ We find it was not improper for the Bankruptcy Court, in order to assess debtor's economic condition, to take into consideration the schedules and statements of affairs filed by debtor in the bankruptcy proceedings as well as the trustee's interim reports available in the Court's records of the bankruptcy proceedings.

It must also be pointed out that counsel for the trustee specifically requested the Bankruptcy Court during trial to take judicial notice of the statements of affairs and schedules without any objection on defendant's part[3].

## CONCLUSIONS OF LAW

■ Defendant's arguments to challenge the Bankruptcy Court's decision to avoid the transfer are essentially that Western did not benefit from the transfer of funds except for $98.60 remaining in its account, and that all subsequent recipients of funds were bona fide creditors, thus Western's role was merely that of an intermediary.

Defendant's arguments pertaining to preferential transfers under 11 U.S.C. § 547 are misplaced since the Bankruptcy Court's Order is based instead on Section 548.

Section 548 in pertinent part provides: § 548. Fraudulent transfers and obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

There is ample evidence in the record to support the conclusion that both debtor and defendant intended to delay payment to creditors of SAS in contravention to 548(a)(1).

Defendant's intent to delay was established through circumstantial evidence. It is important to note the close relationship that existed between the two entities, in that Western was "an affiliate corporation of SAS ... /and/ they both had some interlocking officers and directors"[4], that Wirshing obviated internal control procedures and safeguards in the issuance of the checks in controversy and failed to follow the usual course of business during the disbursement process. There is also the undisputed testimony that debtor avoided depositing the monies in its own account to avoid the FDIC's attachment of the funds. Lastly, it is also important to note the close relationship between SAS and the creditors that were paid from those funds to the

---

**3.** Transcript p. 43.

**4.** Appellant's brief p. 38.

detriment of others like the Commonwealth of Puerto Rico who did not enjoy the same closeness.

The Bankruptcy Court also concluded the transfer was constructively fraudulent under 548(a)(2)(A)–(B)(ii).

We find there is evidence in the record to support the conclusion that the transfer was not an arms-length transaction and that no monies were left for continuing the business operation.

■ Lastly, we find that once the Bankruptcy Court found the transfer voidable under Section 548, the trustee had the power to collect from the transferee, i.e., defendant, pursuant to Section 550(a)(1) which provides:

§ 550. Liability of transferee of avoided transfer.

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; ...

### CONCLUSION

Based on the foregoing, the judgment of the Bankruptcy Court issued on July 13, 1984 and entered on July 16, 1984 is hereby AFFIRMED.

IT IS SO ORDERED.